**E-FILED**
Wednesday, 24 August, 2005  02:24:50 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN SOUTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  03-3275 |
| | ) | |
| ILLINOIS ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Illinois Environmental Protection Agency's (Agency) Motion for Summary Judgment (d/e 12).  Plaintiff John South is an employee of the Agency.  He filed charges of discrimination against the Agency with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights on October 22, 1999, and March 28, 2000.  Further, on April 10, 2000, he was deposed in an employment discrimination case brought in this Court against the Agency entitled, <u>Zino v. EPA</u>, C.D. Ill. Case No. 99-3090.  He believes his testimony at the deposition was

1

damaging to the Agency's case.  The Agency terminated his employment on December 14, 2001.  South filed a grievance with his union over his termination.  Pursuant to a settlement of the union grievance, his employment was reinstated on or about April 28, 2003.  He now claims that the Agency terminated his employment in retaliation for engaging in activity protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII).  South relies on the indirect method of proof to overcome the Agency's Motion for Summary Judgment.  He fails to present any evidence that a similarly situated person was treated more favorably.  He therefore fails to make out his prima facie case, and hence, the Agency's Motion is allowed.

## STATEMENT OF FACTS

South is a scientist.  He began working for the Agency as a Chemist in November 1993.  In 2000, he worked as a Chemist II in the Organic Analysis Subunit of the Agency.  His immediate supervisor was a Senior Public Service Administrator named Gary Germann.  South filed his EEOC charges of discrimination on October 22, 1999, and March 28, 2000.  He further was deposed in the Zino action on April 10, 2000.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary

2

Judgment (d/e 16) (Plaintiff's Memorandum), Exhibit 4, <u>Affidavit of John South</u>, ¶ 8; <u>Memorandum of Law in Support of Defendant's Motion for Summary Judgment (d/e 13) (Defendant's Memorandum)</u>, Exhibit X, <u>Excerpts from April 10, 2000, Deposition of John South</u>.

On September 7, 2000, South sent Germann an email message that stated that South was taking a medical leave of absence effective September 8, 2000. That same day a representative of the Agency's Human Resources Department named Penny Tinder sent South forms and information concerning disability and medical leaves of absence. The Agency requires persons on medical leave to provide periodic written verification of their medical condition from appropriate healthcare providers. 80 Ill. Admin. Code § 303.145(b)(4). On September 22, 2000, and December 12, 2000, the Agency received forms entitled "Physician's Statement" from South's personal physician Terry Killian, M.D. Each of these two Physician's Statements indicated that South was depressed, with an anxious mood and with decreased concentration, energy, and sleep. Each stated that South was unable to work at the time of the Statement. <u>Defendant's Memorandum</u>, Exhibit G, <u>Affidavit of Penny Tinder</u>, Attachment 4, <u>Physician's Statements received September 22, 2000, and December 12,</u>

2000.

On March 9, 2001, the Agency sent a letter under the signature of Ann Price, the Agency's Manager of its Office of Human Resources, to N.R. Sarma, M.D., asking him to conduct an independent medical evaluation of South.  The Agency's regulations authorize the Agency to request such evaluations as follows:

> If the agency has reason to believe that the employee is able or unable to perform a substantial portion of his/her regularly assigned duties, it may seek and rely upon the decision of an impartial physician chosen by agreement of the parties or in the absence of such agreement upon the decision of an impartial physician who is not a State employee and is selected by the State Employees' Retirement System.

80 Ill. Adm. Code § 303.145(b)(6).  Price could not identify the letter during her deposition.  In fact, Price could not remember anything about South during her deposition and could not identify any document relating to South, although she did recognize her signature on some of the documents.  Plaintiff's Memorandum, Exhibit 2, Deposition of Ann Price at 25-69.

South then received a letter from the Agency dated March 12, 2001, under Price's signature, directing him to submit to an independent medical evaluation by Dr. Sarma scheduled for March 26, 2001.  Also on March 12,

2001, the Agency's Human Resources Department received a form entitled Certification of Health Care Provider, signed by Dr. Killian.  This form was also dated March 12, 2001.  Dr. Killian again described South's condition as depressed and anxious mood, with decreased energy, concentration, and sleep.   Dr. Killian stated that South's condition would continue for "probably another 4-6 months".  <u>Plaintiff's Memorandum</u>, Exhibit 1, <u>Collected Documents (Collected Documents)</u> at 19.[1]

On April 12, 2001, Dr. Killian filled out a Physician's Statement for South.  The Statement listed South's diagnosis as "MDD-R" and "ADHD".  Dr. Killian checked the box that indicated that South's condition had improved.  Dr. Killian checked the box next to the word "Psychological" in the section of the form entitled "LIMITATION."  The instruction on the section states "If there is a limitation, check appropriate box and describe below."  Dr. Killian did not provide a further description.  Dr. Killian stated on a subsequent section of the form that South would be able to return to work on April 16, 2001.  <u>Collected Documents</u> at 22-23.  On April 16,

---

[1]Plaintiff attached a set of documents as exhibits and numbered them sequentially with bates stamp numbers.  Defendant has not disputed the authenticity or admissibility of these documents submitted in this manner.  The page numbers referenced herein are the bates stamp numbers.

2001, South's attorney sent a letter to the Agency's Division of Legal Counsel stating that South would return to work on April 17, 2001.  <u>Id.</u> at 21.  South returned on that date.

On April 27, 2001, Dr. Sarma sent a letter to Price regarding the March 26, 2001, appointment.  The letter states in part:

> This gentleman gave me a complaint that he has made on one of the officers of the IEPA agency in the court and refused to answer a majority of the questions asked of him saying that he would not answer those questions. . . .  He said he will not answer any questions about seeing or seeking a psychiatrist's help.  He will not answer any questions of taking medications. He claims that he is extremely depressed and dramatically affected him and he cannot function.  He will not answer any questions about his hospitalization. . . .
>
> . . . .
>
> **Diagnosis:** From the way in which he answered questions he appears to have intact cognition and no evidence of psychosis. He gives symptoms referable to depression but without any substantiating medical history from a psychiatrist or psychologist or other people he could have seen, it is very hard to make from his pure subjective symptoms that he has any illness at all.  Hence, I am unable to conclude in terms of diagnosis except to say that he does not have any psychosis and he does not have any dementia.

<u>Defendant's Memorandum</u>, Exhibit I.

On May 24, 2001, South's attorney sent the Agency's Legal Counsel a copy of a letter from Dr. Killian, dated May 8, 2001.  The body of the

letter stated:

> I received your letter on 4/18/2001, regarding John South's authorization to return to work from his medical leave.  Your letter asked me to explain the limitation in John's duties.  I don't recall having placed limitations on his return, and the copy of the physician's statement dated 4/12/2001 does not list any limitations.  It is possible that they are misunderstanding section five, which asks for a limitation.  This is an explanation of the type of problems that the patient has encountered, <u>not</u> a statement that the patient is returning with limitations.  If he were returning with limitations, I would have marked section number eight to describe what the limitations were.  Enclosed is a copy of the physician's statement dated 4/12/2001.

<u>Collective Documents</u> at 25 (emphasis in the original).  The eighth section of the Physician's Statement form is entitled "REMARKS" and contains blank lines on which to write additional remarks.  Dr. Killian left this portion of the April 12, 2001, Statement blank.  <u>Collected Documents</u> at 23.

On June 28, 2001, the Agency issued a letter to South under Price's signature again directing him to submit to an independent medical evaluation.  The letter directed South to appear at the office of Dr. Chauncey Maher III, on July 11, 2001.  The letter stated, in part, "I understand through the previous independent medical evaluation that you were not fully cooperative with the physicians' examination.  Failure to

cooperate may result [in] termination of any eligibility leaves and any Family Medical Leave entitlement." Id. at 29. South appeared at Dr. Maher's office on July 11, 2001. After the meeting, Dr. Maher sent a letter to Price dated July 11, 2001. The body of the letter stated:

> Mr. John South presented himself in a timely fashion for his appointment with me today. Unfortunately, he was persistently unwilling to divulge details about himself making an evaluation impossible. I'm sorry that I wasn't able to establish adequate rapport.

Id. at 30.

On August 15, 2001, the Agency sent another letter to South under Price's signature. The body of the letter stated:

> Pursuant to 80 ILL. ADM. Code, 303.145(b)(6) we have been attempting to secure an independent medical evaluation due to the lack of a complete, documented medical certification from your Physician, Dr. Terry Killian. Every employee who has been on medical leave must submit a medical certification, acceptable for work performance. We do not have this certification for you. We were unsuccessful in getting complete information from Dr. Killian.
>
> As a result, we have asked you on two separate occasions to see an impartial medical examiner to secure this examination. On both occasions you have been uncooperative and unwilling to respond to questions and divulge details about yourself, making an evaluation impossible. These actions are insubordinate.
>
> I am requesting you to contact my office within five (5) days from receipt of this letter, to set up an appointment with Dr.

Chauncey Maher III for an independent medical evaluation. Failure to secure, to attend, to cooperate with the impartial medical examiner, or failure to respond to questions, about yourself that make an evaluation impossible is <u>insubordination</u> and grounds for disciplinary action up to and including discharge.

<u>Id.</u> at 31 (emphasis in the original).

On September 19, 2001, the Agency sent South another letter under Price's signature, stating:

Pursuant to 80 ILL. ADM. Code, 303.145(b)(6) we have been attempting to secure independent medical evaluation due to the lack of a <u>complete</u>, documented medical certification from your Physician, Dr. Terry Killian.  Every employee who has been on medical leave must submit a medical certification, acceptable for work performance.  We do not have this certification for you. We were unsuccessful in getting complete information from Dr. Killian.

As a result, we have asked you on two separate occasions to see an impartial medical examiner to secure this examination.  On both occasions you have been uncooperative and unwilling to respond to questions and divulge details about yourself, making an evaluation impossible.  These actions are insubordinate.

I have secured an appointment with Dr. Chauncey Maher III, **Friday, October 5, at 11:30am** for an independent medical evaluation.  In addition, enclosed are two releases of information forms you are required to sign, have witnessed and return back to me <u>no later than Monday, September 24, 2001</u>.  This information requested is part of the independent medical evaluation.  Failure to secure, to attend, to cooperate with the impartial medical examiner, or failure to respond to questions, about yourself that make an evaluation impossible is

9

<u>insubordination</u> and grounds for disciplinary action up to and including discharge.

<u>Id.</u> at 35 (emphasis in the original).

On September 21, 2005, Germann gave South his annual evaluation. <u>Id.</u> at 3-5.  Germann stated that South met expectations in every category except human relations.  South disputed this evaluation.  He believed that he exceeded expectations in most categories, including human relations.  <u>Id.</u>

South again did not sign the medical release forms as instructed in the September 19, 2001, letter.  On October 2, 2001, Germann gave South a formal oral reprimand for his refusal to submit required medical information to Human Resources by the deadline given.  <u>Defendant's Memorandum</u>, Exhibit P.  The Agency further sent South a memorandum under Price's signature on October 2, 2001, directing him to sign medical release forms and return them to Price no later than October 3, 2001.  South did not comply.  On October 5, 2001, Germann gave South a formal written reprimand for failing to submit required medical information to Human Resources by the deadline given.

South appeared at Dr. Maher's office on October 5, 2001, as directed in the September 19, 2001, letter.  Thereafter, Dr. Maher's office manager,

Shari McGowan, sent a letter to Price, the body of which stated:

> As you probably are aware, Mr. South did show up at our office for his appointment today, October 5, 2001.  Mr. South was 15 min late for his appointment.  We asked Mr. South to sign a release of information to his previous Mental Health Providers.  Dr. Maher feels he needs this information to do a [sic] appropriate evaluation due to Mr. South is not forthcoming with his previous psychological treatment information and refuses to give any information about any other care he has received.  Mr. South refused to sign the release of information or fill out patient information forms that all patients that come to our office fill out.  He stated he would never sign them.  If we can be of further assistance please don't hesitate to contact us.

Defendant's Memorandum, Exhibit L, p. 2.

On October 18, 2001, South was suspended for five days (four (4) working days) without pay from October 22, 2001, through October 26, 2001, for failing to cooperate with an independent medical evaluation as ordered by the Agency.[2]  That day, the Agency sent South another letter under Price's signature again directing him to cooperate and participate in an independent medical evaluation.  The letter stated, in part:

> I am directing you to participate in an independent medical evaluation.  I am directing you to contact <u>and</u> complete the required forms for Dr. Chauncey Maher III to schedule a medical evaluation.  This includes the medical release forms and any other documents his office requests from patients needing a medical evaluation.  **<u>This must be completed within five (5)</u>**

_____

[2]It appears that South worked a four-day week, 10 hours per day.

**days from receipt of this letter.**  Failure to contact Dr. Maher to complete the medical release forms will result in further disciplinary action for <u>insubordination</u> up to and including discharge.  In addition, upon the execution of the above documents I am directing you to secure (schedule an appointment), attend, and cooperate with the impartial medical examiner.  Failure to respond to questions about yourself that make an evaluation impossible is <u>insubordination</u> and grounds for further disciplinary action up to and including discharge.

<u>Collected Documents</u> at 41 (emphasis in the original).  South did not comply.

The Agency sent South a letter under Price's signature, dated November 2, 2001, again directing him to cooperate and submit to a medical evaluation.  The November 2, 2001, letter contained language identical to the paragraph from the October 18, 2001, letter quoted above. <u>Id.</u> at 46.  South again did not comply.

Furthermore, on November 2, 2001, the Agency held a pre-disciplinary hearing for South.  Germann issued a memorandum to South stating that the Agency suspended South for 15 days, from November 5, 2001, through November 19, 2001, for failure to comply with the direction set forth in the October 18, 2001, letter.  The memo from Germann to South regarding the suspension stated in part, "If you continue to refuse the Agency's request to fully cooperate in an independent medical evaluation,

disciplinary action up to and including discharge can be anticipated."

Defendant's Memorandum, Exhibit T.   A handwritten note on the memorandum states, "John South's attorney, John Baker, attended this meeting (unexpectedly).   Wanted a compromise: wants John to see Dr. Sarma instead of Dr. Maher.   EPA agreed & dropped 15-day suspension." Id.

The Agency then sent South a letter under Price's signature dated November 9, 2001, stating, in part:

> As a result of discussions at your pre-disciplinary meeting held November 2, 2001 I have scheduled an independent medical evaluation appointment with Dr. N. M. Sarma.
>
> The Illinois Environmental Protection Agency (Agency) has for some time attempted to secure an independent medical evaluation due in part to our growing concerns that you are unable to do a substantial portion of your regularly assigned duty and do so in a safe and harmonious workplace atmosphere . . . .
>
> Therefore, I am directing you to fully cooperate and participate in an independent medical evaluation.   I am directing you to complete the enclosed release of information forms, requested by Dr. Sarma.   These forms must be completed and received in Dr. Sarma's office by 5:00pm November 15, 2001.   Failure to complete the release of information forms by the required time will result in insubordination and further disciplinary action up to and including discharge.   Additionally, I am directing you to fully participate and cooperate in a medical evaluation with Dr. Sarma at 2:30pm December 4, 2001.   Failure to respond to

questions about yourself that make an evaluation impossible or incomplete is insubordination and will result in further disciplinary action up to and including discharge.  Please be on notice that failure to complete the medical release forms by the required date will cancel the scheduled appointment and will result in discipline outlined above.

Defendant's Memorandum, Exhibit U (emphasis in the original).  South again did not execute the medical release forms.

On December 4, 2001, another pre-disciplinary meeting was held. After the meeting, Germann gave South a memorandum stating that South was suspended without pay for 30 days pending discharge.  The memorandum states:

You are being suspended, without pay, for a period not to exceed thirty (30) calendar days, pending discharge.  The suspension is effective December 11, 2001.

This suspension results from your insubordination in failing to cooperate in an independent medical evaluation as directed by the Agency, your work performance and inappropriate behavior in the workplace.  You will be notified on before January 9, 2002, from the Department of Central Management Services, of your eligibility of continued employment.

You are currently on Administrative Leave with pay pending the commencement of your suspension.  All provisions of this Administrative Leave remains [sic] in effect through December 10, 2001.

Defendant's Memorandum, Exhibit V. South's termination became effective

December 14, 2001.

South then filed a grievance under his collective bargaining agreement. On January 15, 2003, the grievance was settled pursuant to the terms of a document entitled Resolution Prior to Arbitration (Settlement). The Settlement was signed by representatives of the Agency and South's union. Under the terms of the Settlement, South received back pay from December 14, 2001, through August 14, 2002. The Settlement stated that he would be on an unpaid leave of absence from August 15, 2002, until he returned to work at the Agency. He agreed to submit to an independent medical evaluation. If he was found to be fit, the Agency would offer employment as an Environmental Protection Specialist III in a Department outside of the Agency's laboratories. South cooperated with the independent medical examination at this time, and returned to work at the Agency on or about April 28, 2003. The Settlement also stated:

> This resolution is made without precedent or prejudice to either party and may not be utilized in any subsequent proceedings except for the enforcement of its terms.

Defendant's Memorandum, Exhibit W.

The Agency's table of organization shows that eight individuals worked as Chemist II under Germann in 2001. Collected Documents at 1.

South also listed four of these co-workers in his Affidavit, but did not state any other information about any of them.  <u>Plaintiff's Memorandum</u>, Exhibit 4, <u>Affidavit of John South</u>, ¶ 6.   South submits an affidavit from one individual, Shirlene South.  <u>Plaintiff's Memorandum</u>, Exhibit 5, <u>Affidavit of Shirlene South</u>.  South submits no other evidence concerning his other co-workers.  Shirlene South's Affidavit states:

1.  That I am an adult resident of Macoupin County, Illinois.

2.  That I am presently employed by the Illinois Environmental Protection Agency.

3.  That in 2001 I was employed as a Chemist II with the IEPA.  My immediate supervisor at the time was Gary Germann.

4.  That at no point in time have I ever filed a charge of discrimination with the Illinois Department of Human Rights.

5.  That at no point in time have I ever been asked by the IEPA to submit to a medical evaluation of any type.

6.  That further your affiant sayeth not.

<u>Id.</u>

## ANALYSIS

South claims that the Agency retaliated against him for engaging in protected activity, in violation of Title VII.  The Agency asks for summary

judgment.  To prevail, the Agency must present evidence that demonstrates the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to South.  Any doubt as to the existence of a genuine issue for trial must be resolved against the Agency.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Once the Agency has met its burden, South must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The Agency argues that South waived his right to bring this action by participating in the Settlement.  The Agency also argues that South has not presented evidence of a <u>prima</u> <u>facie</u> case.  The Court sees no waiver in the Settlement, but agrees that South has not presented evidence of a <u>prima</u> <u>facie</u> case of retaliation.

A.  <u>WAIVER</u>

The Agency first argues that South waived his right to bring this action because he accepted the benefits of the Settlement.  A plaintiff may waive claims, but the Court sees no waiver language in the Settlement.  The

Settlement only addresses the grievance, not any other potential claim. There is no language releasing other claims.  There is no express waiver. Rather, the Settlement states that the agreement does not operate to prejudice South's rights to bring this proceeding: "This resolution is made without precedent or prejudice to either party and may not be utilized in any subsequent proceedings except for the enforcement of its terms." Defendant's Memorandum, Exhibit W.  The Court sees no waiver.[3]

## B.   RETALIATION ANALYSIS

South must present evidence of a prima facie case of retaliation to overcome the Defendant's Motion for Summary Judgment.  South may present evidence to establish a prima facie case under either the direct or indirect method of proof.  The direct method requires evidence of: (1) statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the two.  Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 508 (7th Cir. 2004); Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 642 (7th Cir. 2002).  The indirect method requires evidence that South: (1) engaged in statutorily protected activity; (2)

---

[3]Of course, the back pay and any other benefits recovered under the Settlement could not be recovered twice.  The Court does not address this issue in detail since the Agency is entitled to summary judgment on other grounds.

performed his job according to his employer's legitimate expectations; (3)

suffered an adverse employment action; and (4) was treated less favorably

than similarly-situated employees who did not engage in statutorily protected

activity.  Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 531 (7th Cir.

2003).

South states that he is proceeding under the indirect method.

Plaintiff's Memorandum at 9.[4]   The parties agree that he engaged in

statutorily protected activity when he filed charges of discrimination and

testified in a deposition on behalf of another employee in a separate

discrimination action.  South also clearly suffered an adverse employment

action when he was terminated.

The parties disagree over whether South was meeting the Agency's

legitimate expectations.  The Agency states that he was not performing his

job properly and that he was insubordinate by refusing to cooperate with

independent medical evaluations.  South argues that he was performing his

job properly.  He notes that he received a largely satisfactory employment

evaluation in September 2001, shortly before his discharge.  Germann stated

---

[4]South could not prevail under the direct method because he has no evidence of a causal connection between his actions in 1999 and 2000 and his discharge in December 2001.

that he met expectations in every category except human relations.

South also argues that he was not insubordinate because the order to undergo a medical evaluation was an improper order.  South argues that the regulation quoted above, § 303.145(b)(6), only authorized independent medical evaluations if the Agency had reason to believe that he was unable to perform a substantial portion of his regularly assigned duties.  South argues that, in this case, the Agency knew that South could perform his regularly assigned duties because Dr. Killian so stated in the April 12, 2001, Physician's Statement.  He further argues that Dr. Killian clarified any question about his April 12, 2001, Physician's Statement in his May 8, 2001, letter when he explained that the box checked for a psychological limitation referred to South's past condition, not his current state of health. Because the Agency knew that South could perform his duties, it had no right to ask him to submit to a medical evaluation.  Thus, the order to do so was improper, and he was not insubordinate by refusing an improper order. The conflicting evidence, when read in the light most favorable to South, creates an issue of fact of whether South was meeting the Agency's legitimate expectations.

South, however, presents no evidence that any of his co-workers were

similarly situated or that they were treated less favorably.  "In disciplinary cases, the plaintiff must show that she is similarly situated to other employees with respect to performance, qualifications, conduct, and also that she and the other employees dealt with the same supervisor." Kriescher v. Fox Hills Golf Resort and Conference Center, 384 F.3d 912, 916 (7th Cir. 2004); accord, Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000).  South presents evidence that Shirlene South was a co-worker with the same supervisor and that Shirlene South never filed a charge of discrimination.  Shirlene South also has never been asked to submit to a medical evaluation.  Plaintiff John South presents no other information about this woman.  The evidence does not indicate the level of her qualifications or the quality of her work performance.  The evidence does not indicate whether she was ever disciplined.[5]  The evidence does not indicate whether she was ever on medical leave.  The evidence does not indicate whether she engaged in any other conduct similar to Plaintiff John South's conduct.  The evidence is simply insufficient.  South presents no evidence

---

[5]South states in his Memorandum that none of his co-workers were terminated. Plaintiff's Memorandum at 11.  He presents no evidence on this point, however. Shirlene South's Affidavit, quoted above, does not state whether she has ever been disciplined.  She only states that she currently works for the Agency.

about any other co-worker other than each person's name.  He fails to present evidence on this element of his <u>prima</u> <u>facie</u> case.  Thus, the Agency is entitled to summary judgment.

THEREFORE, the Defendant's Motion for Summary Judgment (d/e 12) is ALLOWED.  Summary judgment is entered in favor of the Defendant Illinois Environmental Protection Agency, and against the Plaintiff John South.  All other pending motions are denied as moot.  This case is closed. IT IS THEREFORE SO ORDERED.

ENTER:   August 19, 2005.

FOR THE COURT:

<u>        s/  Jeanne E. Scott        </u>
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE